ROBERT HOUSTON,

*vs.*

BARKLEY TOWNSEND.

*Sussex, T.* 1833.

Payment of the whole, or of a substantial part, of the purchase money is such a part performance of a contract for the sale of land as takes the case out of the Statute of Frauds. The authorities on this subject reviewed.

The payment must be clearly made and accepted in execution of the contract—being referrible to no other object.

Generally, the fact of part performance,—as when it consists of some unequivocal acts of the parties, referrible only to the contract, such as the taking possession of the land, &c.,—may be proved by parol. But the payment of money not being such an unequivocal act, the fact *that it was paid in execution of the contract* must either be admitted by the answer, or, if denied, must be proved by writing,—as by receipts or letters from the alleged vendor.

The fact of part performance being established, parol evidence is admissible to ascertain *the terms* of the contract. The terms should be clearly and distinctly proved ; but the mere fact that they are controverted will not deter the Court from seeking to ascertain them. And if, from the nature of the testimony, it be difficult to ascertain them, the Court may direct an issue for that purpose.

The payment of $1,400.00 on account of purchase money amounting to $3,750.00. *held* to be a sufficient part performance, and that the fact and object of the payment was sufficiently proved by receipts of the vendor ; and, the subject matter and terms of the contract being ascertainable from the evidence, a specific execution decreed.

BILL IN EQUITY FOR A SPECIFIC PERFORMANCE.—This was a bill for the specific performance of a parol contract for the sale of lands. The lands in controversy consisted of the residue of the real estate of Thomas Townsend, deceased, father of the defendant, Barkley Townsend, which in certain proceedings in the Orphans' Court for Sussex County for the assignment of dower and partition of the residue of the intestate real estate of Thomas Townsend, deceased, had been accepted by Barkley Townsend at the valuation thereof returned by the freeholders appointed to make the assignment and partition. The bill alleged that prior to the acceptance of the lands by Barkley Townsend, it was agreed between him and the complainant, that the complainant should join him in the acceptance of the real estate, and that, to make such arrangements effectual, the defendant would, after acquiring the title to the same, sell and convey to the complainant one half part thereof upon the terms following, viz : that the complainant

should pay for the one half part of the real estate, the sum of $3,750.00 (which was one half the appraised value) as follows : that the complainant should sell and deliver one half of his interest in the schooner "Tanner" and one half of a scow, as payment of $625.00 ; that he should pay one half of a debt due from the estate of Thomas Townsend, deceased, to the Farmers' Bank of the State of Delaware, at Georgetown, the said debt amounting to $2,155.00, and the half part thereof, which the complainant was to pay to the Bank, amounting to $1,577.50 ; and the residue of the purchase money, to wit, $1,547.00, the complainant was to pay in cash upon the execution of a deed by the defendant. The bill further alleged a performance of the contract in part, and a tender of the residue ;— that the complainant had paid in cash $1,400, and had sold and delivered to the defendant one half of his interest in the schooner " Tanner " and in the scow, worth together $625.00, and which were accepted by the defendant as a further payment to that amount, making in the whole the sum of $2,025.00, actually paid by the complainant in execution of the contract ; that the residue of the purchase money of the half part of said real estate, to wit, $1,725.00, the complainant had tendered to the defendant, with a demand for the execution of a deed pursuant to the contract ; but that the defendant had refused to accept the money tendered and to execute a deed ; that the complainant was yet ready to pay the balance of $1,725.00, and fully to perform the contract on his part. The bill also alleged that the complainant held receipts for the cash payments amounting to $1,400.00,—one, a receipt for $800.00, dated March 15th, 1832, and the other, a receipt for $600.00, dated April 7th, 1832 ; that these receipts were signed and delivered to him by the defendant, as memoranda and notes in writing, acknowledging, as well the contract for the sale of one half part of the real estate, as the receipt of the sums of money

paid on account of the purchase money. The bill also alleged that the defendant had admitted to sundry persons, that he had sold to the complainant the one half part of the property which he had accepted as the residue of the intestate real estate of Thomas Townsend, deceased. The prayer of the bill was for a discovery, and for a decree that the contract should be specifically performed by the defendant, the complainant tendering himself ready to perform the same on his part; also, for an account of rents and profits, &c.

The defendant pleaded " the act about contracts and assumptions," ( *Digest Del. Laws*, 88) ; and also answered. The answer alleged that after the defendant had accepted the lands in controversy, the complainant applied to him for a purchase of one moiety thereof; that a treaty for such purchase was entered upon, and that pending such treaty the complainant advanced to him the said two sums of $800 and $600, which the defendant accepted in expectation that a bargain would be concluded, and that such advances would go toward the purchase money. Also, the defendant did agree to accept the complainant's interest in the schooner and scow, as part of the consideration, should a sale be effected. But the defendant alleged that the parties failed to agree upon the terms of the sale of said lands, and that no contract for sale was in fact ever made ; that, consequently, the schooner and scow were not transferred to the defendant, and that he offered to repay the cash sums advanced by the complainant, but the latter refused to receive them. The answer admitted the indorsement by complainant of the note for $2,155.00 to the Farmers' Bank, but alleged that the note had been wholly paid by the defendant. The answer utterly denied the making of the alleged contract, and the signing of any paper or doing of any act intended to be in part performance of any contract whatever for the sale of the lands in controversy.

The plea was set down for hearing, and after hearing was overruled by the Chancellor, but with an order that the plea should stand for an answer,—the benefit of the same be reserved to the defendant at the final hearing.

The case was put at issue, and depositions taken; and the cause came before the Chancellor, at the September Term, 1833, for a hearing on the bill, answer, exhibits and depositions.

Among the exhibits proved and read at the hearing, were the two receipts referred to in the bill and answer, and which were as follows:

(1.) " Received, March 10th, 1832, of Robert Houston, eight hundred dollars, which is in part pay of the half of the mill property, &c., in Middleford, which I promise to deed when called on.

(Signed.)

BARKLEY TOWNSEND.

(2.) "Received, April 17th, 1832, of Robert Houston, six hundred dollars, in part pay of the one half of the Middleford property, which I have sold to him.    $600.

(Signed,)

BARKLEY TOWNSEND.

There were also, among the exhibits read, the following letters written by the defendant to the complainant, viz:

MARCH 3d, 1832.

(1.) MR. ROBERT HOUSTON.

SIR: Mr. Stuart informed me to-day that he would want his money in cash. You will please to meet me at Georgetown on Tuesday, and take enough money, if you have it, to pay him off, which will be about $800. Don't fail to go.

(Signed,)

BARKLEY TOWNSEND.

MIDDLEFORD, MARCH 7th, 1832.

(2.) MR. R. HOUSTON.

SIR : I expected to see you to-day, but my horsé is not at home, and this will answer the same. You will please to meet me at Georgetown to-morrow. I shall endeavor to have the business fixed. Don't fail. If Joshua Elligood has sent any papers to your store for me, please send them by the bearer.

(Signed,)
B. TOWNSEND.


MIDDLEFORD, APRIL 26th, 1832.

(3.) MR. R. HOUSTON.

DEAR SIR : I am compelled to relate a circumstance, which is very disagreeable to me, concerning the property. Our business, it appears is put to a stop by one circumstance which I do not like to mention here ; but will relate to you when I see you. Some people have made themselves very busy, and they knew too well when to stop it. The amount you have advanced me I will return soon, if you wish it. I can't take the vessel under the present circumstances, but I will give you my freights, which is considerable per year. I will endeavor to see you to-morrow.

Very respectfully,
(Signed,)
B. TOWNSEND.


There was a considerable body of testimony taken under depositions, mainly intended to prove certain admissions on the part of the defendant, to sundry persons, of his having contracted to sell to the complainant one-half part of the property accepted by the defendant as the residue of the intestate real estate of Thomas Townsend, deceased. As the material parts of this testimony are stated in the opinion of the Chancellor, it need not be here set forth.

*C. S. Layton*, for the complainant.

*E. D. Cullen*, for the defendant.

JOHNS. JR., CHANCELLOR.—The decision of this case appears to me to depend on two questions. *First,* Whether there has been a part performance. *Second,* If there has, then whether the terms of the parol contract as set forth in the bill are clearly proved.

1. As to the first question,—It is now settled, that equity does decide upon equitable grounds, in contradiction to the positive enactment of the Statute of Frauds; and, in cases of part performance, will admit parol testimony to prove the terms of a parol contract relative to land. *Hovenden, Tit. Spec. Perf.* 1, 2. The ground of equitable interposition is the prevention of fraud. *Vide Foxcraft vs. Lister, Colles Parl. Cas.* 108 : *Jeremy's Eq.* 437 : 2 *Atk.* 100 : 1 *Br. Ch. Rep.* 417 : 1 *Swanst.* 181 : 7 *Ves. Jr.* 341: 3 *Ves. Jr.* 39–40 *and note* : *Parkhurst vs. Van Courtland,* 14 *Johns Rep. on Appeal,* 15. Whether payment of part of the purchase money is such a part performance as takes the case out of the Statute appears to be an unsettled point, and the decisions are contradictory. 1 *Madd. C. P.* 379: *Sugd. Ven.* 81 *to* 85. The early decisions upon the subject are, *Lord Pengal vs. Ross,* 2 *Eq. Ca. Ab.* 46 : *Seagood vs. Meale, Prec. in Ch.* 560 : *Luke vs. Morris,* 2 *Ch. Ca.* 135. These are generally cited as authorities to the point that it will not; but I would remark with respect to them, that they are adverted to in subsequent decisions as cases in which only a small sum was paid as earnest; and in 3 *Atk.* 1 : 3 *Ves. Jr.* 37 : 4 *Ves. Jr.* 720, it is held that part payment of the purchase money does take the case out of the Statute, upon the principle of part performance. These decisions have been objected to as extra judicial by Sugden, and as being nothing more than *dicta.* He refers to one made by Lord Redesdale as conclusive. 1 *Sch. and Lef.* 41.

Opinion :—whether part payment sufficient as a part performance.

Upon looking into this case it appears to me, the contract was in writing ; "the sum paid was in the agreement stated to be a deposit, and interest to be paid, if possession not delivered ;" and the plaintiff seeking a specific performance of this written contract, which was under seal, attempted to supply by parol proof one of the terms alleged to have been omitted. It is true, in this case Lord Redesdale does take up the question whether part payment is part performance ; and, reasoning upon the case before him and its circumstances, concludes therefrom, and also from the peculiar phraseology of the English Statute of Frauds, that part payment of purchase money does not take the case out of the Statute of Frauds ; for he says, the great reason, as I think, why part payment does not take such agreements out of the Statute is, that the Statute has said that in another case, viz. : with respect to goods, it shall operate as part performance. And the Courts have, therefore, considered this as excluding agreements for lands ; because it is to be inferred, that when the legislature said it should bind in the case of goods and were silent as to the case of lands, they meant that it should not bind in the case of lands. As this distinction does not exist in our Act of Assembly about contracts and assumptions, which is the Act relied on by the defendant in this case,. it may be questioned whether Lord Redesdale's opinion can have any influence, especially as his reason does not apply.

So far as I have been able to trace the question in the American decisions upon the point of part payment, they accord with the decisions and *dicta* of Lord Hardwicke and Lord Rosslyn. In the case of *Wetmore vs. White,* 2 *Caine's Cases in Error,* (*New York*), Thompson, J. in delivering the opinion of the Court, (p. 109) says expressly, that payment of the consideration money had always been held as a part performance. Judge Reeves, under the title, " Powers of Chancery," in his Treatise on Domestic Rela-

tions, has, after stating the conflicting decisions on this point, remarked in his peculiar manner, " that if it be *no fraud* to receive another's money on the footing of a parol agreement, and then to refuse the fulfilment of the agreement, then the cases in *Prec. in Ch., Eq. Ca. Ab. & Sch. & Lefroy,* are correct, supposing the governing principle of the interference of chancery was to prevent fraud; but if it be fraud so to do, then they are incorrect, and the cases in *Vern.* 3 *Atk. &* 4 *Ves. Jr.* are correct, which proceed on the ground that the prevention of fraud was the reason why they were supposed not to be within the Statute. Washington, J., in the case of *Thompson vs. Tod.* 1 *Peters. Cir. Ct. Rep.* 388, says, " although it should be admitted that, under all the circumstances of this case, payment of a part of the purchase money will amount to a part performance, still it should appear beyond all reasonable doubt, that the payment was understood by the parties to have been so made and intended."

This opinion of Washington, J., accords with the principles laid down in *Powel on Cont.* : and 1 *Bac. Abr.* 74, *tit. Agreement.* I will refer to what is said by Bacon upon the subject of part performance, as it recognises essential principles and states the rule of evidence with respect to the payment of purchase money. Under the title of Agreement, (1 Vol. 73), Bacon says—" There are several cases in which it has been held, that a parol agreement, in part executed, shall be performed in the whole; but as those cases are not exactly stated or well reported, it will be sufficient to mention what seems to be the sense of them, and what, with any justness, can be collected from them, that if an agreement be made concerning lands, though not in writing, and the party by whom it was made receives all or part of the money, equity will compel a specific performance of the whole agreement; because this is out of the Statute, which designed to defeat such agreements only, no part whereof were carried into execution,

and set up merely by parol; for that was the occasion of frauds and perjuries, that persons used to impose verbal agreements upon others, and by such false oaths charge the parties in equity to perform such agreements though they had never been made; and, therefore, the mere parol proof of such agreements concerning lands cannot be admitted in a court of equity; but where the price is paid, there it doth not stand upon the parol proof of the agreement only, but upon the execution of part of the agreement, which is evidence that the agreement was really made; and, therefore, there is the same reason that the plaintiff in equity should have the land for his money, as it is that he should deliver the goods where he has received the money; but the doubt in these cases is, what shall be a proof of the receipt of the money. Thus far it seems certain, that if the defendant in his answer confesseth the receipt of the money for that purpose in the bill, or if he denies the money, and it be proved upon him by writing, as by letter under his hand, or other written evidence, he shall be obliged specifically to perform the whole agreement, because he hath carried part into execution; but if the defendant confesses the receipt of the money, but says that he borrowed it from the plaintiff, and that he had it not in execution of that agreement, there he turns the proof of the agreement upon the plaintiff, and then the plaintiff must prove the receipt of the money by the defendant for the purpose in the bill, by some written agreement;"—for parol evidence as to the receipt of the money seems to be as much excluded by the Statute as parol evidence relating to the agreement.

From the investigation of the several decisions, I come to the conclusion, that there may be cases, in which payment of the whole, or part of the purchase money, will amount to performance of a parol contract concerning lands; and whenever the non-performance on the part of the vendor after receiving the purchase money, or a part

54

thereof, would put the party into a situation that is a fraud upon him, unless the agreement is performed, the Court upon the principle of preventing fraud should decree a specific performance; provided, the terms of the agree ment can be satisfactorily ascertained, that is, the agreement as set forth in the bill. The act relied on as part performance should be such as would not have been done independent of some contract or agreement relative to land; because, as you are from the act performed to infer a contract, it must therefore be an act of that description which will not admit any other inference. I would further remark, that the act must to a certain extent be a joint act, or such as clearly indicates mutual assent. Thus, entering into the possession of land as owner, and with the consent of the vendor, has uniformly been considered and admitted to be part performance; and being evidence *per se* of an agreement for and concerning the land, the party seeking specific performance is permitted, by parol, to prove the terms. This act of the vendee, in entering upon the land and taking possession thereof as owner, with the assent of the vendor, is considered as in execution of an agreement, and therefore a part performance; but acts which are only preparatory, such as giving directions for conveyances, taking a view of the estate or putting a deed into the hands of a solicitor to prepare a conveyance, are not considered part performance. *Clerk vs. Wright,* 1 *Atk* 12: 6 *Bro. Par. Ca.* 45: 3 *Bro. Ch. R.* 400: 1 *Mad. C. P.* 381. So likewise, where there was a parol agreement for a compromise and a division of the estate by arbitration, acts done by the arbitrators towards the execution of their duty, such as surveying, &c., were not considered as acts of part performance, 6 *Ves. Jr.* 41. And where there was a parol agreement for the purchase of a lease, and that upon the plaintiff procuring a release of right from a stranger, the defendant would convey, and the plaintiff procured the release for a valuable consider-

ation, this was held not to be a part performance entitling the party to a specific performance. 2 *Cox. R.* 271. These cases, and particularly the last, clearly evince the principle, which is essential to constitute an act a part performance; the thing done must be, as before stated, in execution of the contract, and not as preparatory or as inducement. See *Gevins vs. Salder*, 2 *Dessaus.* 190. Hence has arisen the difficulty with respect to the payment of money, not being such an act as of itself is conclusive ; for it may have been made for a purpose different from that alleged ; and if the party paying can by parol prove the fact of payment and the object, then it is apparent the door is open to perjury and fraud; and the Statute would be rendered useless and its provisions defeated. This has no doubt given rise to the opinion that payment of money, either in part by way of earnest or in full for the purchase, is not a part performance. If the fact is to be established by parol, then I should consider the opinion to be well founded; but if the fact of payment is connected with the concurrent act of the vendor receiving and appropriating the money paid as purchase money ; and this appears, either by the defendant in his answer confessing the receipt of the money for that purpose, as charged in the bill; or if denied, it be proved upon him by writing, as by letter under his hand or other written evidence; or, if the defendant confesses the receipt of the money, but says he borrowed it from plaintiff, and had it not in execution of the agreement, then if the plaintiff prove the receipt of the money by the defendant, for the purpose alleged, by some written agreement; in all such cases, and upon every principle, it seems to me that such a fact, thus appearing, would be conclusive evidence of an existing agreement of which it was part performance, and which the defendant having carried part into execution should be compelled specifically to perform the whole.

In the case now under consideration, the complainant

in his bill has charged the payments as made on account of the purchase money and in execution of the agreement set forth. The defendant, in his answer, admits the receipt of the money, as an advance pending the treaty for sale; but denies that said advances were a part performance of an agreement to sell and convey the said real estate, or any part thereof, to complainant; and also admits the two receipts. As the answer here admits the receipt of the money and denies that it was in part performance, we must recur to the receipts of March 10th, 1832, and April 17th, 1832, which are admitted by the defendant and proved by the witnesses to be signed by him. These receipts unequivocally establish the fact of part payment, to the amount of $1400, nearly one-half the purchase money as set forth by the complainant in his bill. The defendant has also admitted the proceedings in the Orphans' Court relative to the acceptance; and has not denied the matter stated by the complainant as to the inducement for his entering as surety in the recognizance. The equity of the complainant, as thus presented, is strong; and a case could not occur more in accordance with the rule as laid down by Bacon than that which appears from the two receipts. The defendant by the first receipt, dated March 10th, 1832, has not only acknowledged the receipt of $800, but also says " which is in part pay of the half of the mill property in Middleford, which I promise to deed when called on." The proceedings in the Orphans' Court of the same date show the property and the acceptance by the defendant, and fix the quantity. Thus the subject matter of the parol contract, and to which the receipts refer by name as the mill property in Middleford, is ascertained; a moiety of which, the defendant by said receipt declared he had sold to complainant; and by the acceptance it is proved to be two thirds of the residue of the Middleford property, which defendant accepted at the valuation, a moiety or half part of which he sold to the

complainant. This is a question which, as it relates to the terms of the contract, will be hereafter considered and properly belongs to the second question to which I will now advert; and, under the circumstances of the case, being of opinion that the payments on account of the purchase money, made and proved as aforesaid, are such acts as amount to part performance, I will now take up the second question, viz. : whether from the testimony in the case, the terms of the agreement set forth in the bill are clearly proved.

2. It being the settled rule of the Court of Chancery that where a contract relating to an interest in lands has been executed by one party, or carried partly into execution, it may be proved by parol evidence, and specific performance decreed, in order that one side may not take advantage of the Statute, to be guilty of fraud.(1 *Ves. Sr.* 221, 297 : 2 *Johns. Rep.* 221, 573, 587 : 1 *Serg. & Rawl.* 80 : 5 *Day*, 16 : *Parkhurst vs. Van Courtland*, 14 *Johns. Rep. on Appeal* 15 ;) and as I was of opinion that the part payment of the purchase money is a part performance of the contract set forth in the bill, the next consideration is whether that contract is made out by clear and satisfactory proof. Upon this subject *Sugden*, in his *Treatise on Vendors*, 86, remarks, " It may happen that although an agreement be in part performed, yet the Court may not be able to ascertain the terms, and then it seems the case will not be taken out of the Statute. If, however, the terms be made out satisfactorily to the Court, contrariety of evidence is not material (1 *Ves. Sr.* 221) and the Court will use its utmost endeavors to get at the terms of the agreement. 2 *Ves. Jr.* 243 : 2 *Sch. & Lef.* 1 : 5 *Vin. Abr.* 523, *pl.* 40 ; *Ib.* 522, *pl.* 38 : 6 *Ves. Jr.* 470 : 3 *Br. Ch. R.* 139 : 1 *Sch. & Lef.* 22. In *Boardman vs. Mostyn*, 6 *Ves. Jr.* 470, Ld. Eldon says ; " perhaps if it was *res integra*, the soundest rule would be that if the party leaves it so uncertain, the agreement is not taken out of the Statute sufficiently to be enforced ; but in all the cases

in equity, the Court has at least endeavored to collect, if it could, what were the terms the parties have referred to." *Sugden on Vendors*, 89, after stating a case lately decided by Lord Manners, and remarking that great reluctance had been manifested in carrying parol agreements into execution on the ground of part performance, where the terms do not distinctly appear, observes that, notwithstanding the case decided by Lord Manners, there appears to be abundant authority to prove that the mere circumstance of the terms not appearing, or being controverted by the parties, will not of itself, deter the Court from taking the best measures to ascertain the real terms. And Sugden further remarks, that it can rarely happen that an agreement cannot be distinctly proved where the estate is absolutely sold. Most of the cases on this head have arisen on leases, where the covenants, &c., are left open to future consideration. If, from the testimony, it is difficult to ascertain the terms of the agreement, the Court, to remove all doubts, may direct an issue. Hence, in the case now before the Court, if I am correct in the opinion I have expressed on the first point as to part performance, then it would be incumbent on the Court to ascertain the terms of the contract ; or, if this could not be done, to direct an issue as to such facts as may not be clearly proved or established. The only fact about which there can be a doubt in the present case, is the price. The subject matter of the contract, and the quantity thereof sold and for which the defendant promised to give a deed on demand, I consider settled beyond all controversy, by the receipts signed by defendant and bearing date March 10th, 1832, and April 17th, 1832; and their operation and extent are fully and unequivocally ascertained, when taken in connection with the proceedings relative to the acceptance of said real property by defendant in the Orphans' Court of Sussex county, and with the testimony of Boyce and Elligood,—the defendant having by the acceptance acquired a title to two

thirds of the real estate of his father, Thomas Townsend, deceased, described as the mill property in Middleford. Also, by the receipts dated March 10th and April 17th, 1832, defendant acknowledges to have received the sums mentioned,—in the first receipt in part pay of the half of the mill property in Middleford, which he promised to deed when called on;—by the second receipt he says, " in part pay of the one-half of the Middleford property which I have sold him." Thus much appearing to the Court by these receipts, which are proved in the cause, and not even denied, except evasively, as to their import, in the answer, I shall proceed to the inquiry whether the testimony satisfactorily establishes what was the consideration agreed upon.

The complainant in his bill sets forth the consideration, and alleges the same to be $3750 ; and then proceeds to state the manner in which, it was agreed, he was to pay the same to defendant. The defendant, in his answer, denies that any sum ever had been in fact agreed upon. The answer thus positively denying the fact, unless the same is established, either by the testimony of two witnesses or of one corroborated by circumstances,the denial in the answer must be conclusive. As this is one of the essential terms of an agreement, and necessary to be ascertained, I will advert to the testimony.

The first witness on the part of the complainant (the defendant not having taken any testimony) is Capt. Boyce, who in his deposition states, " that the defendant in the month of April or May, 1832, informed him he had sold half of the Middleford mills and property to complainant, and purchased the schooner Tanner and scow from him for $625 ; price of real property not stated; that he could have got more for said property than he had agreed to let Robert Houston (complainant) have it for." Now, it does appear that although no price was stated by the witness, yet his testimony proves two facts, viz : that

the defendant had sold half of said property to the complainant and for a consideration agreed upon between the plaintiff and defendant; because, the defendant in stating to the witness that he had sold, had he said nothing more, would have afforded strong ground of presumption; but when he goes on to state, that he could have got more for said property than he had agreed to let Robert Houston have it for, he thereby unequivocally refers to a fixed price, settled and agreed upon, between the parties; otherwise, how could he with any propriety say, he could have got more for said property ? The admission of the defendant, as proved by this witness, is therefore at variance with that part of his answer which denies that any price, or sum, or terms were agreed upon or fixed between complainant and defendant for the purchase of the said real estate by the complainant; hence, unless the testimony of Capt. Boyce is either sustained by another witness, or corroborating circumstances, it cannot prevail against the positive denial of the defendant, which is made under oath. But it does further appear, from the deposition of J. A. Elligood, that some time in the spring of 1833, at the time when complainant tendered the alleged balance of the purchase money, the defendant in presence of Elligood, in replying to what complainant stated to be the contract or agreement, admitted, " that he had heretofore agreed to convey said property to him, for the amount mentioned, but that it would be unjust that he should convey for that sum, being one-half of the valuation money." From the testimony of these two witnesses, both unimpeached and not controverted, except by the denial in the answer, it does appear that the parties had agreed upon the price or sum constituting the consideration ; and from Elligood's testimony the sum is ascertained to be half of the valuation, and is thus rendered certain, because *id certum est quod certum reddi protest*; and by referring to the record of the Orphans' Court, which is in evidence in this cause,

the one-half of the valuation appears to be the sum of $3750, as alleged in complainant's bill.

In considering the testimony in relation to this point, as to the sum or price having been fixed or agreed upon by the parties, the deposition of Noonan in connection with the answer, at first view, appeared to present some uncertainty whether the sum fixed or agreed upon was the half of the valuation, or half what the property cost defendant; and whether, under the term half what the property cost could be included the half of other expenses relative to the procuring the Act of Assembly, &c., they being properly a charge against the fund generally. But the deposition of this witness has relation to declarations of Townsend as to what he *intended to do*, and not, like the others, of what he *had done*. The subsequent information of Townsend, that there was a misunderstanding between him and Houston, does not disclose the cause, only that it was about the purchase of the Middleford property. From the declarations of Houston to Noonan it does appear that it related to the extra expenses, which it appears were never adjusted, although he seems to have been willing to pay his fair proportion. From the declarations, and the occasion when they were made, both before Noonan and Elligood, I am induced to believe this difficulty about extra expenses originated after the defendant had refused to perform the agreement. I am led to this opinion by the import of defendant's letter addressed to complainant, dated April 26th, 1832. In this letter the defendant attributes the interruption of the business to some unpleasant circumstance, which he was to communicate to the complainant when he should see him ; and evidently attributes the non-compliance on his part to the interposition of some people, " who he says made themselves very busy, and who knew well when to stop it, &c." If the real difficulty had been a misunderstanding about the extra expense, would it not have been disclosed in this

55

letter of the 26th of April? Why intimate that he was compelled to relate a circumstance that was very disagreeable to him? Surely, if the other had been the difficulty, it could have been stated with propriety, without occasioning any unpleasant feeling, such as the letter implies; nor could such a matter be in any way referred to the interposition of other people. This letter of the 26th April, written a few days after Houston had paid the defendant $600, evidently discloses that the writer was by no means satisfied with the course he was then adopting. He had, by the money and credit of the complainant, after discharging the debts against his deceased father's estate, been enabled to accept the two-thirds thereof at the valuation reduced more than one-half by the amount of incumbrances and debts paid off; and, in the course of the proceeding, as appears from the records of the Orphans' Court, had the benefit of the complainant's credit, as one of his sureties in the recognizance—a liability yet subsisting.

From all these circumstances, appearing in the cause, it is evident the defendant availed himself of the full benefit of the agreement, so far as the same had been performed by Houston, and did not make known his determination not to comply with the same on his part until he had obtained all the advantage he expected to derive from it. Upon the ground, therefore, that under the circumstances of this case it would be a fraud upon the complainant, if a specific performance were refused, I am of opinion the complainant is entitled to relief; but, before the same can be granted, it is necessary to direct an account of the rents and profits of the one-half of the two-thirds of the real estate for which the defendant, by the receipt dated March 10th, 1832, promised to give to complainant a deed on demand. And as equity considers as done that which is agreed to be done, I regard the right of the complainant to the one-half of the two-thirds of the said real estate as

a perfect and subsisting title in equity from the date of the aforesaid receipt;—that it carried with it the right to the rents and profits, and entitled the defendant from that time to the balance of the purchase money, with interest, subject to deductions for such payments as might be clearly proved to have been made; all which, when the rents and profits shall be accounted for under an interlocutory order, will be adjusted, and the balance due on account of the purchase money being thus ascertained, then the Court will be able to make a final decree in the cause. Interlocutory decree for an account.

This decree was affirmed by the Court of Errors and Appeals, at the June Term, 1835. See 1 *Harrington's Rep.* 532.