125 A.2d 266 (1956)
Laura Mae ROSS, Plaintiff,
v.
Roy Allen CANNON and Mary C. Cannon, Defendants.
Court of Chancery of Delaware, Sussex.
September 12, 1956.
*267 Arthur Dean Betts, Georgetown, for plaintiff.
Robert W. Tunnell, Georgetown, for defendants.
MARVEL, Vice Chancellor.
Plaintiff alleges that on or before June 25, 1946, she reached an oral agreement with the[1] defendant under the terms of which he agreed to sell her certain property in Seaford Hundred, Sussex County, lying on the west side of the road leading from Seaford to Bridgeville and more fully described in the complaint. Plaintiff contends that under the terms of the agreement she agreed to pay $1,500 for the property as well as the expenses of a title search, insurance, recording of the deed to the property, interest on the unpaid balance of the purchase price and the cost of installing wiring in a house on the property to be purchased. The total agreed to be paid by plaintiff in the transaction is alleged to be $1,830. Of this amount, plaintiff claims to have paid $1,310 on account.
Defendant denies that a contract for the purchase and sale of land exists and contends that plaintiff is a mere tenant who is subject to eviction from the property in question because she has failed for a number of years to maintain even token payments of the contemplated rent. Defendant claims that he is entitled to rent payments in the amount of $5.00 a week during the entire period of plaintiff's occupancy against which sum plaintiff should be credited for her earlier payments and outlays for repairs to the property. Eviction proceedings were enjoined by a temporary restraining order, and this is the opinion of the Court after final hearing.
Plaintiff for a number of years was an employee of defendant's parents and during Mr. Cannon's childhood worked as a servant and nurse in the Cannon household. After leaving the Cannon household plaintiff was permitted for a number of years to live rent free in one of the Cannon tenant houses and was employed by defendant in his restaurant business and in various other capacities. Plaintiff, having been asked to move from the Cannon house where she had been allowed to live rent free, went to defendant and discussed the possibility of purchasing the property which is the subject matter of this suit. As a result of these conversations, I am convinced that on or before June 25, 1956 the parties reached an oral agreement under the terms of which defendant agreed to acquire and to sell to plaintiff the property plaintiff wanted. The terms of the agreement having been made, plaintiff moved into the premises.
On June 25, 1946 defendant, having arranged to purchase the land in question, caused title to the property to be placed in his name and that of his brother, and a so-called "Time Book" (plaintiff's exhibit #1) was made up which lists the cost of the property as $1,500 and itemizes other charges to be paid by plaintiff in connection with the transaction. On defendant's instructions this book was turned over to plaintiff. It discloses that in the year 1946, commencing on July 20, 1946, twenty three credits of $17.50 and one credit of $5.00 were entered in plaintiff's favor in the book by Virginia Pegelow and F. A. Moore, employees of Mr. Cannon. Weekly payments were continued in lesser amounts of ten dollars, fifteen dollars and twenty dollars until December 5, 1947. In addition plaintiff after taking possession made substantial improvements to the property including the repairing of a chimney, the moving of two outbuildings onto the property and the installation of plaster boards in several rooms.
In 1949, plaintiff went to defendant to discuss the problem of putting new shingles *268 on the house and was advised to go ahead with the work (which was performed at a cost of approximately $600) and not to worry about payments on the house in view of this substantial outlay on her part.
About this time plaintiff began to wonder whether or not a deed to the property in her name was actually of record and went to Georgetown to look into the matter. Finding no deed of record she again went to Mr. Cannon who reassurred her that title was being held in his name to protect plaintiff from her creditors. Plaintiff continued to believe (in my opinion with reason) that she was the equitable owner of the property and did so until May 1955 when Mr. Cannon brought eviction proceedings claiming plaintiff to be a mere tenant.
Plaintiff having moved into the property, made improvements and paid defendant approximately $1,300 (and defendant having assented to these acts) there is no necessity that a contract in writing have been in existence in order for plaintiff to be entitled to a decree of specific performance if a contract for the purchase and sale of real property exists, Carlisle v. Fleming, 1 Har. 421, Townsend v. Houston, 1 Har. 532, and Shepherd v. Niles, 14 Del.Ch. 316, 125 A. 669.
Is there clear and satisfactory proof of a contract for the sale of land? Despite defendant's insistence that he merely intended to rent, I find that an oral contract for the purchase and sale of land was made. Not only does plaintiff's exhibit #1 disclose the elements of such a contract and substantial payments by check but additional payments in 1949 of $50 and $40 are evidenced in the form of receipts (plaintiff's exhibits #2 and #3) signed by defendant's employee, Mr. Moore, which contain the notation "payment on house." In the light of this documentary evidence and the testimony, I find that the oral contract relied on by plaintiff was made no later than June 25, 1946.
Defendant, having some years ago taken title to the property in his own name, contends, however, that his wife to whom he was married prior to the date of the contract to which she is not a party cannot be forced to convey her inchoate right of dower in the property. The answer to this contention lies in the fact that at the time of the formation of the contract defendant did not hold legal title to the property which he had contracted to sell and that in equity he purchased the property subject to his obligation to plaintiff.
The situation is similar to that found in Hallett v. Parker, 69 N.H. 134, 39 A. 583, in which the Supreme Court of New Hampshire stated in reference to a husband's sole contract to reconvey property to plaintiffs upon the fulfillment of certain conditions.
"He executed and delivered to the plaintiffs the bond to convey the land to them at the same time he received the deed. The reception of the deed and the giving of the bond were simultaneous acts and parts of the same transaction. He never owned the land when he was not under an equitable obligation to convey it."
The Court concluded that under these circumstances the wife could be compelled to execute the deed of reconveyance solely to remove any cloud on title. Compare Ardito v. Howell, 29 Del.Ch. 467, 51 A.2d 859, Esso Standard Oil Co. v. Cunningham, Del.Ch., 114 A.2d 380.
While defendants have raised the defense of laches in their pleadings, it is not argued on their brief and I am satisfied that plaintiff acted promptly when (after being lulled into inaction by defendant) she became fully apprised of the actual situation as a result of eviction proceedings.
An order directing defendants to convey the property described in the complaint to plaintiff will be entered on tender by plaintiff of the balance of the moneys due on the contract with interest.
Order on notice.
NOTES
[1] Defendant in this opinion refers to Roy Allen Cannon. His wife, Mary C. Cannon was joined as a party in order to subject her to any decree entered in plaintiff's favor by this Court.