Leonce P. Durand, Jr., and Florence A. Durand,
Plaintiffs,

*vs.*

Henry E. Snedeker, Vera E. Snedeker, Thomas C. Snedeker,
Elizabeth S. Foraker and Charles H. Foraker,
Defendants.

*New Castle, February 9, 1962.*

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, for plaintiffs.

*Wilfred J. Smith* and *Frank J. Gentile, Jr.,* of Smith & Gentile, Wilmington, for defendants Henry E. Snedeker and Vera E. Snedeker.

*Bruce M. Stargatt,* of Morford, Young & Conaway, Wilmington, for defendants Elizabeth S. Foraker and Charles H. Foraker.

Marvel, Vice Chancellor: According to the complaint in this case, on or about April 20, 1961 plaintiffs contracted to buy and defendants contracted to sell some 290 acres of farm land in Red Lion Hundred together with the buildings thereon located, namely, a barn, storage shed and a large dwelling. Defendants Henry E.

Snedeker, Thomas C. Snedeker and their sister Elizabeth S. Foraker are the actual owners of undivided interests in the lands [1] in question, Vera E. Snedeker having merely a dower interest as Henry's wife and Charles H. Foraker a curtesy interest in the share of his wife, Elizabeth. The complaint alleges that the defendants Henry E. Snedeker, Vera E. Snedeker and Thomas C. Snedeker agreed in writing to such sale on or about April 20, while the defendant Elizabeth S. Foraker, being in Florida at the time "* * * orally contracted, by telephone, to sell her interest in the 'Snedeker Farm' to the plaintiffs, agreed to execute the contract signed by her two brothers when it was mailed to her, and agreed that the plaintiffs could take immediate possession of the farm (but not of the mansion house and other improvements) . . ." It is further alleged in the complaint that "* * * On or about the following day, April 21, 1961, the defendant Charles H. Foraker orally agreed to sell his interest in said premises and agreed to execute said contract of sale as soon as the defendant, Elizabeth S. Foraker, had executed said contract."

The complaint goes on to state that acting in reliance upon the oral contract of the defendants Elizabeth S. Foraker and Charles H. Foraker and the written contract of the defendants Henry E. Snedeker, Vera E. Snedeker and Thomas C. Snedeker and in the belief that a firm and binding contract existed, the plaintiffs partially performed the contract by making a down payment of $500, and in further reliance upon said oral and written contracts, plaintiffs "* * * with the permission and acquiescence of all the defendants and with the active assistance and cooperation of defendant, Henry E. Snedeker, entered into possession of the farm (but not of the mansion house) and performed * * *" a number of possessory acts, including the building of a road, the performance of certain acts of excavation, the installation of eight machines, each weighing several tons, designed to prepare peas for marketing, the planting of some thirty-five acres in garden peas, and the making of other planting arrangements with tenants then engaged in farming operations on the property.

---

1. Under their mother's will a half interest in the farm was left to Henry and a quarter share each to Thomas and Elizabeth.

The complaint concedes that during the time plaintiffs were engaged in the possessory acts outlined in the complaint the defendants Henry E. Snedeker and his wife Vera continued to reside in the mansion house but that neither of said defendants nor any of the other defendants at any time prior to the filing of the complaint made any objection to plaintiffs' possession of parts of the lands in dispute.

The complaint concludes with an allegation that defendants after agreeing to sell the lands in question, later repudiated their contract by indicating that they would not perform it on June 15, 1961, the proposed date of settlement, thereby committing an anticipatory breach. Plaintiffs pray that inasmuch as they are willing and able to perform the undertakings agreed to by them in said contract of sale, that defendants be forthwith ordered specifically to perform their part of the contract according to its terms. Alternatively, in the event specific performance should not be granted, plaintiffs ask that damages be awarded them in the amount of $50,000. In an amendment to the complaint an additional prayer is added to the effect that if specific performance not be granted against the non-signing defendant Charles H. Foraker, that such decree be granted against the other defendants without abatement of the purchase price because of the contingent curtesy interest of the said Charles H. Foraker.

The defendants Henry E. Snedeker and Vera E. Snedeker deny the existence of an enforceable contract for the sale of land, contending that during the negotiations up to and including April 20, 1961 it was understood between the parties that a contract of sale would come into being only if all of the defendants were to agree upon the terms of such contract and thereafter execute a contract in writing, and that such was not done. Said defendants contend that even assuming that an oral contract was made by Mrs. Foraker, there was no effective partial performance by plaintiffs. They further claim that if a contract ever existed, it was thereafter rescinded by mutual agreement. Finally, they say that in any event specific performance may not be had against less than all the defendants because

the agreement sued upon contemplated a conveyance of land by all defendants, including Charles H. Foraker.

In their amended answer the defendants Elizabeth Foraker and Charles H. Foraker deny the existence of an enforceable contract for the sale of the Snedeker farm, specifically denying that Mrs. Foraker made an oral agreement for such sale and contending that in any event should such oral agreement be found to exist, that it may not be enforced because of the provisions of the Delaware statute of frauds, § 2714, *Title 6 Del.C.* By counterclaim these defendants also seek damages against plaintiffs for their alleged improper occupation and use of parts of the Snedeker lands.

The defendant Thomas C. Snedeker failed to appear in response to substituted service, and a default judgment was entered against him on September 11, 1961, said judgment being subject to being reopened upon his answering or moving in response to the complaint within thirty days thereafter. No responsive pleading was thereafter filed by such defendant although he did appear and testify at the trial. In any event, Thomas's failure to comply with the rules and order of the Court presents no problem of substantive law in the case in view of the fact that the two Snedeker brothers and their sister, Mrs. Foraker own undivided interests in the lands in controversy and that any effective relief for plaintiffs in the form of specific performance would have to run against all of these defendants.

Section 2714 of *Title 6 Del.C.* provides in part:

"(a) No action shall be brought to charge any person * * * upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, * * * unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing * * *."

The purpose of the statute is explained by its title, namely to afford protection against fraud not only in the type of transaction described in the language above recited but also in a number

of other listed transactions omitted from the above quotation. Nonetheless, actual part performance of an oral contract is recognized as a substitute for the statute of frauds on the theory that acts of performance constitute substantial evidence of a contract, *Hamilton v. Traub*, 29 *Del.Ch.* 475, 51 *A.2d* 581. By the same token, it is well established that specific performance will not be decreed unless "* * * the existence and terms of the contract sought to be enforced are established by that high degree of proof which has been variously characterized by the terms 'clear,' 'clear and convincing,' 'clear and satisfactory' or other equivalent expressions." 81 *C.J.S. Specific Performance* § 143, *p. 727*, citing *inter alia Aldridge v. Franco Wyoming Oil Co.*, 24 *Del.Ch.* 126, 7 *A.2d* 753. See also *Godwin v. Collins*, 3 *Del.Ch.* 189, 4 *Houst.* 28, *Connaway v. Wright's Administrator*, 5 *Del.Ch.* 472, *Hindes v. Wilmington Poetry Society*, 37 *Del.Ch.* 80, 138 *A.2d* 501, and *M. F. v. F.*, ante, p. 17, 172 *A.2d* 274. And the rule for obvious reasons has been held to have especial application to a parol contract, *Motor Parts Co. v. Bendix Home Appliances*, D.C.Del., 36 *F.Supp.* 649, and 81 *C.J.S. Specific Performance* § 143, *p. 727*.

The exigencies of time militate against a detailed analysis of the evidence. A new planting season is approaching and the parties here in dispute as well as those having rights in the lands here in dispute as tenants or share croppers are entitled to have this Court's opinion as to their respective rights in the lands in controversy.

In brief, I am of the opinion that the evidence bearing directly on the issue of whether or not an unequivocal oral contract was made by Mrs. Foraker on the night of April 20 does not clearly establish such a contract. The lady in question was aroused from a sound sleep by a telephone call placed at the Snedeker farm some time after 11 p.m. She was at the time at home in Florida while her husband was in Delaware for the alleged purpose of attempting to buy the farm for himself. Mrs. Foraker denies speaking to Mr. Young, an agent, in the words of the written contract, "for the parties", or that she agreed to sell, and her brothers and sister-in-law agree. On the other hand, Mr. Young, whose recollection and that

of the Durands differs with that of the Snedekers as to such alleged conversation, held other telephone conversations with Mrs. Foraker both before and after the night of April 20. His version as to exactly what transpired on the night in question is perhaps explained by these other conversations and by his enthusiasm for the proposed sale, a transaction which, if consummated, would benefit him to the extent of a 6% commission on a sale having a total dollar value of $157,500. I have no doubt but that Mrs. Foraker, in response to the enthusiasm of her brothers for the revised draft of contract presented to them that evening, evidenced interest in Mr. Durand's latest proposal, particularly because of the fact that the agent, Mr. Young, had agreed to take his commission as the purchase price was paid over a period of ten years rather than all at once. I have grave doubts, however, that she agreed unequivocally on that occasion to the terms of a proposed written contract which was not before her. On the other hand, I am satisfied that after the phone call to Florida both brothers were convinced that their sister would almost certainly agree to the sale because of her approval of its theory. Such approval, however, was hardly unequivocal assent to all the terms of a written contract. Furthermore, while they did not sign the contract until after talking to their sister, the brothers had already virtually made up their minds to sell, if she agreed, and they knew, of course, that the contract could not be executed by her until it was sent to Florida for that purpose. Finally, and most significantly, they were aware of the fact that their brother-in-law who was then in Delaware was not only a prospective purchaser of the farm but was also in the anomalous position of being at the same time a prospective party to the contract before them.

Mr. Durand claims that his precipitate action in moving into a part of the Snedeker farm was taken in reliance on what was said in a telephone conversation to which he was not a party. However, the possessory steps taken by him were as consistent with a later plan on his part to which Henry Snedeker, the owner in residence, was not adverse, namely, to negotiate an alternative, salvaging arrangement whereby he would take over a portion of the farm as owner and lessee in lieu of his original offer to buy the entire property.

In *Houston v. Townsend,* 1 *Del.Ch.* 416, *aff'd,* 1 *Harr.* 532, an action on an oral contract for the sale of land, Chancellor Kensey Johns, Jr., stated:

> "The act relied on as part performance should be such as would not have been done independent of some contract or agreement relative to land; because as you are from the act performed to infer a contract, it must therefore be an act of that description, which will not admit any other inference."

In *Shepherd v. Niles,* 14 *Del.Ch.* 316, 125 *A.* 669, however, Chancellor Josiah O. Wolcott stated in declining to grant specific performance of a contract for the sale of land:

> "There are two questions presented by this cause. These are, first, was a parol contract entered into between the parties as alleged in the bill, and second, if so, was there such part performance of it as to take the case out of the statute of frauds?

> "The view I take of the second question makes it unnecessary for me to consider the first one. Conceding that the oral agreement was entered into as alleged in the bill, yet it seems clear to me that the complainant is not entitled to have it specifically enforced for the reason that the facts fail to disclose such part performance as removes the obstacle of the statute of frauds set up by way of defense in the answer."

Because of the factual situation in the case at bar I have necessarily considered both questions posed in the case last cited, judging plaintiffs' claims as to part performance primarily as they throw light on what was actually said over the telephone by Mrs. Foraker on the night of April 20, 1961. Having found that plaintiffs did not clearly establish by direct evidence an unequivocal oral commitment on the part of Mrs. Foraker to sell her interest in the farm, the alleged acts of part performance relied on by plaintiffs as further evidence of such a contract are to say the least ambiguous. Not only, as earlier noted, were the possessory act of plaintiffs partial and consistent with later negotiations for lesser rights in the Snedeker

farm than those originally bargained for but such acts were also not clearly authorized by Mrs. Foraker. Finally, without considering whether or not a down payment was actually made to her brothers, there is no evidence which could conceivably establish an unambiguous acceptance of a down payment[2] by or on behalf of Mrs. Foraker. Compare *contra Ross v. Cannon*, 36 *Del.Ch.* 63, 125 *A.2d* 266.

On notice, an order may be presented denying plaintiffs' prayers for specific performance and dismissing the complaint.

---

2. Mr. Young testified on cross-examination, T204.

"Q. Did you tell her that there was a $500 deposit?

A. I am sure I must have.

Q. Did you tell her that the deposit was in the form of a check which you were instructed not to negotiate without notifying Durand?

A. I don't remember specifically."