NYE ODORLESS INCINERATOR CORPORATION, a corporation of the State of Delaware,

*vs.*

NYE ODORLESS CREMATORY COMPANY, a corporation of the State of ·Georgia, AUGUSTUS C. FELTON, JR., J. W. MARTIN, JOHN T. MOORE, J. E. WRIGHT, HARRY B. ABEL, ELIZABETH FELTON ANDREWS, H. L. BARFIELD, BESSIE C. DUNWOODY, R. R. DUNWOODY, HATTIE C. FELTON, E. W. GOULD, RUTH FELTON HALLUM, CARRIE W. HUDSON, CLAIRE B. JONES, W. N. LAINE, MRS. TE COAH LEWIS, MRS. C. W. MOORE, JULIA MCCREARY, PEARL O'DANIEL, MRS. C. C. PATRICK, PATTIE STONE, ALLINE L. WRIGHT.

*New Castle, Aug.* 12, 1931.

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, for complainant.

*Ayres J. Stockly,* of the firm of Hastings, Stockly & Duffy, for individual defendants.

THE CHANCELLOR: The solicitor for the complainant prefaces his argument at the beginning of his brief with the following:

"For the purposes of this argument it is conceded that the Georgia Corporation is an indispensable party. This leaves to be decided only the following questions:

"1. Whether any property of the Georgia Corporation

has been seized in this proceeding, making the service by publication effective.

"2. Whether the Court has not jurisdiction over the cause even in the absence of any seizure of the property of the Georgia Corporation."

This concession saves me the necessity of ruling upon the question of the indispensability of the Georgia company as a party.

I shall therefore direct my attention to the two heads of argument which the complainant's solicitor makes after conceding that the Georgia company is an indispensable party.

1. Whether any property of the Georgia corporation has been seized and the basis thus laid for its constructive presence in the cause through service by publication.

What has been seized by the sequestrator is shares of stock standing in the names of the individual defendants on the books of the complaining company. No stock has been seized standing in the name of the Georgia corporation. The complainant appears to take the view that the shares of stock standing in the names of the individual defendants are the property of the Georgia company, and hence their seizure is a seizure of the property of that corporation.

This is an erroneous conception of the situation. So far as the Georgia company is concerned, the title to the shares has gone from it. It parted with all of its property rights in them. The mere fact that its unpaid creditors might disregard the transfer of the stock by the Georgia company to its stockholders, does not mean that the Georgia company is the owner of them either in law or equity. It simply means that the stockholders have received property from their corporation which is impressed with a lien in favor of unpaid creditors of the corporation, and, according to some courts, may be so far treated by creditors as never having passed to the stockholders as to be subject to seizure and sale on execution proceedings taken out upon a

judgment rendered against the corporation. I know of no case which holds that under such facts as we have here the assets which the corporation distributed to its stockholders continue to be the corporation's in its own right in the sense that the corporation can retake them from the stockholders and hold them for itself. Creditors (or receivers acting for them) have no right to the transferred assets in specie. Their sole right is to look to them, to the extent of their value, for payment.

Under the most favorable view for the complainants, the Georgia company, if it be said to have a right to recover the assets from its stockholders in order to put itself in position to pay its debts, would have only rights of action against the stockholders.

Now the sequestrator in this cause never of course pretended to attach any rights of action belonging to the Georgia company against its stockholders. He could not have done so, for the Georgia company and all of its stockholders reside beyond this jurisdiction.

I cannot see how the seizure of the stock in the names of the stockholders of the Georgia corporation can be said to constitute a seizure of the property of the latter. But if it were a seizure of property of the Georgia company, and the Georgia company were therefore brought into court, the question would then arise as to whether its enforced presence could be regarded as sufficiently broad to supply the basis of a personal judgment against it and thereby establish the predicate for the assertion of liability against its stockholders. But that question is one that I am not called upon to consider, for I conclude that the seizure of the stock belonging to the individual defendants did not constitute the seizure of property belonging to the Georgia company.

2. The next question is, as phrased by the solicitor for the complainant, whether the court has jurisdiction over the cause even in the absence of any seizure of the property of the Georgia company.

I suppose what is meant by this is not whether there is jurisdiction to entertain the subject matter of the suit, but rather whether there is power in the court to proceed with its adjudication in the absence of an indispensable party, who has not been brought in either by personal service or by seizure of its property.

In support of the point made under this head, the solicitor for the complainant bases his argument on the fundamental proposition that the suit is one *quasi in rem*. If the suit were one involving the question of title to the seized stock, there can be no doubt but that, the *res* being located here, the court would have jurisdiction to adjudicate its title as between the parties to the suit, and the compulsory presence of the parties claimant to it could be secured by substituted service under the statute by way of publication.

Such a proceeding though not technically *in rem*, would be in the nature of proceedings *in rem*.

But the suit, so far as the concededly indispensable party is concerned, is not of that nature. The Georgia company, under the facts shown has no interest in the seized stock which the bill seeks to have adjudicated. There can be no question as to who owns the stock. The only question is whether the complainant is a creditor of the Georgia company because of a fraud alleged to have been perpetrated by it, and, if so, whether the owners of the stock have received it under circumstances which subject it to a liability to answer for the debt. The suit is in the nature of an action *in rem* only in the sense that, though the suit is a personal one, yet property within the jurisdiction owned by the individual defendants has been seized in order to have it available to satisfy any decree that might be entered in the cause against its owners. The suit is analogous to a foreign attachment at law.

This is far from saying that a party who is not shown to have any claim to the property, but who for reasons entirely disconnected with the title to it is nevertheless an

indispensable party, can be brought into court by the seizure of the property owned by the other defendants after the fashion of an attachment at law, when the purpose of the suit is to subject the owners of the seized property to a derivative liability for a claim alleged to exist against the absent party.

The bill shows that the alleged claim of the complainant against the Georgia company has never been established by judgment. If it is a valid claim, it must be found to be so in this suit, and I suppose the reason why the complainant concedes that the Georgia corporation is an indispensable party in the cause is that the court could not adjudicate the Georgia company's liability (which is the *sine qua non* of the existence of the liability of the individual defendants), without its presence in the cause. Whether this supposition is correct is of no moment, because the indispensability of the Georgia company as a party is conceded generally.

The conclusion is that there was no seizure of the Georgia company's property as contended for under the first head, and, the suit is not, so far as the Georgia company is concerned, such a suit *in rem* or *quasi in rem*, as contended for under the second head, as to permit of its proceeding in the absence of that corporation, whose presence is concededly indispensable.

The plea will be sustained. Order accordingly.

*On Motion for Reargument.*

After the opinion was filed in this case on August 4, 1931, in which reasons were given for sustaining a plea, the complainant moved for a reargument. The grounds on which the motion was based are stated in the ensuing memorandum filed by the Chancellor.

THE CHANCELLOR: The grounds upon which the motion for reargument is based are as follows:

"1. That the Court did not consider the effect of the *'Uniform Fraudulent Conveyance Act', 30 Delaware Laws, chapter* 207, upon the transfer of the assets to the individual defendants by the Georgia corporation. The transfer denuded the corporation of all its assets before the payment of creditors such as the complainant. The act clearly states that such a transfer is a fraudulent conveyance and that a creditor (such as complainant) can have 'the conveyance set aside.' This is the very thing complainant seeks to do in these proceedings and this is the proper tribunal to set the conveyance aside. The alleged undenied facts show complainant's right and as 'Equity regards that as done which ought to be done' this Court should treat the transfer as 'set aside.' Therefore title to the seized stock remains in the Georgia corporation and the plea should not be sustained. The Common Law affords the same result. *Ziska v. Ziska*, 20 *Okl.* 634, 95 *P.* 254, 23 *L. R. A. (N. S.), page* 1.

"2. That the Court did not consider the undenied allegation in the Bill of Complaint that the distribution was 'wrongful, wholly without warrant in law or in equity and *contrary to the Statute of the State of Georgia,*' (where made). This allegation constitutes an averment that the transfer was null and void. If, as alleged in substance and undenied, the transfer of the assets was null and void, title thereto remained in the Georgia corporation and the plea should not be sustained.

"3. That the Court erred in saying the present suit is not one *quasi in rem.* *Pennoyer v. Neff*, 95 *U. S., page* 714, 24 *L. Ed.* 565.

"4. That the action is one *quasi in rem*, that constructive service was had upon the Georgia corporation under the Delaware Statutes, 36 *Delaware Laws, chapter* 268, *Revised Code, Section* 3850, as amended 1929; and therefore, the service is effective and the plea should not be sustained. *Ziska v. Ziska*, 20 *Okl.* 634, 95 *P.* 254, 23 *L. R. A. (N. S.), page* 1."

The reasons thus set forth will be noticed in the order of their statement.

1. The complainant's case needs no support from the *Uniform Fraudulent Conveyance Act* to establish the liability of stockholders of a corporation who have received its assets in distribution when creditors of the corporation are unpaid. The opinion heretofore filed is not in conflict with that act. The question on the plea is one of parties—whether the presence of the absent Georgia corporation is

indispensable to the progress of the cause. The *Uniform Fraudulent Conveyance Act* contains no provision as to parties. The complainant admits that the Georgia corporation is an indispensable party and I have taken the admission as conclusive on that point. I cannot see how the *Uniform Fraudulent Conveyance Act* is helpful in disposing of the plea.

2. The Georgia statute is not pleaded by exhibiting its language in the bill. I assume that the transfer was "without warrant" under the statute in the same sense that it was without warrant "in law and equity." That can only be to the extent necessary for the relief of creditors. The opinion assumes that the distribution was void to that extent. But the question of the indispensability of the Georgia corporation as a party is not solved by observing that creditors may set aside the transfers. A right may be capable of demonstration sufficient for the affording of relief; but while courts often permit the demonstration in the absence of proper parties, they never do so unless the presence of indispensable parties is secured by either personal or constructive service of process upon them. In this case, there was no personal service and the opinion holds that there was no constructive service.

3. I do not understand what is meant by the statement that the court erred in saying the present suit is not one *quasi in rem*. The opinion says in substance it is such a suit —like a foreign attachment at law. But it is such a suit against the individual defendants only. It is not so against the admittedly indispensable party, because no property of that party has been seized or sequestered.

4. This point is answered by the last sentence in the paragraph immediately preceding.

Motion denied.