HELEN POPE, INDIVIDUALLY, AND RANDOLPH POPE, DIANE POPE AND JOSEPH POPE, INFANTS, THROUGH THEIR NEXT FRIEND, HELEN POPE, AND HELEN POPE, ADMINISTRATRIX OF THE ESTATE OF JOSEPH POPE, DECEASED, AND GEORGE RUSSINKO, DAVID WASSERMAN, FRANK MARTONE, OIL AIR CORP., A CORPORATION OF NEW JERSEY, STEPHEN J. HAV-RILLA, HELEN BILAS, BENJAMIN REINAUER AND REINAUER BROS., INC., A CORPORATION, PLAINTIFFS-APPELLANTS, v. BETTY BAIN, SOMETIMES KNOWN AS BETTY P. BAIN, DEFENDANT-RESPONDENT, AND HENRY BAIN, III, AND SAUL COHEN, DEFENDANTS.

Argued January 15, 1951—Decided February 12, 1951.

352

Mr. *Martin Klughaupt* argued the cause for the appellant Helen Pope, individually and as administratrix of the estate of Joseph Pope, deceased.

Mr. *John G. Dluhy* argued the cause for the appellants George Russinko, David Wasserman, Frank Martone, Oil Air Corp., a corporation of New Jersey, Stephen J. Havrilla, Helen Bilas, Benjamin Reinauer and Reinauer Bros., Inc., a corporation.

Mr. *Aaron Heller* argued the cause for the respondent Betty Bain (*Messrs. Heller & Laiks,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. Certification was granted in this cause, 5 *N. J.* 383, on the petition of the plaintiff, Helen Pope, individually and as administratrix of the estate of Joseph Pope, deceased, to review a judgment of the Superior Court, Appellate Division, 8 *N. J. Super.* 263, which reversed a judgment entered in the Chancery Division of the Superior Court, 5 *N. J. Super.* 541, impressing certain liens on property held in the name of the defendant, Betty Bain.

The factual situation discloses that Joseph Pope died intestate on June 27, 1947, leaving his widow, the appellant here, and three minor children surviving him. On August 11, 1944, Joseph Pope purchased premises known as 170 Lafayette Avenue, in the City of Passaic, and on March 4, 1946, he purchased the adjacent property, 172 Lafayette Avenue. Title thereto was taken at his direction in the name of his

sister, the defendant Betty Bain. On June 28, 1945, Pope purchased a vacant lot on Paulison Avenue, in the City of Passaic, title to which was also taken in the name of Betty Bain. On July 19, 1946, Betty Bain at the direction of Joseph Pope conveyed a portion of the Paulison Avenue lot to the defendant, Saul Cohen, as security for a loan of $5,000 made by Cohen to Pope.

At the time and during the period covered by these transactions there was outstanding against Pope a judgment of $30,000 entered in a negligence suit against him. All this real estate was purchased by Pope and title thereto taken in the name of Betty Bain to avoid this existing judgment of record in the sum of $30,000. The judgment was wiped out by his discharge from bankruptcy on March 25, 1946, which was subsequent to all these transactions with the exception of the conveyance from Pope to Cohen of a portion of the Paulison Avenue lot which was made as stated on July 19, 1946.

The proofs clearly indicate that as to all the transactions the money was advanced by Pope and title taken in Betty Bain's name either because of the outstanding judgment or the possibility of other judgments being secured against him. It is not seriously disputed that all the moneys involved were advanced and belonged to Pope.

This suit was originally instituted by Pope's widow and children in an endeavor to impress a trust on the real estate held by the defendant, Betty Bain, on the theory that the properties were purchased by Pope with his money and title thereto taken in the name of Betty Bain; that she held the properties in trust for the plaintiffs, the wife and heirs-at-law of Pope. Subsequently Mrs. Pope, as administratrix of her husband's estate, and certain creditors were granted leave to intervene as parties plaintiff. Four of the intervening creditors allegedly had performed work and supplied materials in and upon the buildings on the properties and the other three had loaned money to the decedent Pope.

The Chancery Division judge determined that the defendants, Betty Bain and Cohen, held the record title to the properties in trust for the plaintiffs since they had been pur-

chased by Pope with his own funds and for his benefit, and that even though Pope had taken title in his sister's name to defeat the rights of a judgment creditor, his wife, his heirs-at-law and subsequent creditors were entitled to a lien against the properties. The court further held that the defendant, Betty Bain, was entitled to a lien for moneys advanced by her for taxes, amortization, interest payments on the mortgage, insurance and repairs.

The judgment entered on the determination ordered that all four parcels be sold and from the proceeds the widow's dower be fixed and paid and the remainder paid over to the widow as administratrix of the estate of Joseph Pope, deceased, and by her, subject to administration, payment should be made to the creditors and the balance to be distributed among the heirs-at-law. The judgment made a provision for the payment of the defendant's lien as against the property known as 172 Lafayette Avenue and the lien was fixed at the sum of $1,735.56. No provision was made for this particular lien to be impressed on either the 170 Lafayette Avenue or the Paulison Avenue properties. It also appears there may be a mistake in the printed record of the judgment since both the appellant and the respondent seem to agree that the amount of this lien is $1,935.56.

An appeal was taken to the Appellate Division by Betty Bain as to the three properties held in her name but no appeal was taken from the judgment of the trial court respecting the property held in the name of the defendant, Cohen, and no appeal was taken by the defendant, Henry Bain, III, the husband of Betty Bain.

The Appellate Division reversed the judgment of the Chancery Division as to the creditors on the ground that they were not creditors at the time of the conveyances. With respect to the widow, Helen Pope, it held, though agreeing with the trial court she was unaware of and had no part in the scheme to defraud creditors and was an innocent victim thereof, that she stood in the shoes of her husband and was not entitled to any dower interest, and that as to her the conveyances to Betty Bain were not assailable. The Appellate Division also

held that the conveyances were good and could not be assailed by the children on the ground that a transfer of property made in fraud of creditors, while void as to the creditors, is good between the parties, their heirs-at-law and legal representatives, citing *Bankers' Trust Co. v. Bank of Rockville, etc.,* 114 *N. J. Eq.* 391 (*E. & A.* 1933); *Blaine v. Krysowaty,* 135 *N. J. Eq.* 355 (*Ch.* 1944), and *Culley v. Carr,* 137 *N. J. Eq.* 516 (*Ch.* 1946).

We are in accord with the determination of Judge Grimshaw in the trial court and the judgment there entered except in two particulars, (1) as to the claims of the children, the heirs-at-law, and (2) his failure to allow a prior lien to the defendant for her expenses in maintaining the property known as 172 Lafayette Avenue.

We have no quarrel with the principle enunciated by the Appellate Division that the heirs-at-law stand in the shoes of their ancestor but it has no application in the instant case to the rights of the widow, and the cases relied upon by the Appellate Division are clearly distinguishable on the facts. In the *Bankers' Trust Company* case the children of a deceased donor brought suit against their step-mother, the widow of the deceased donor, and the case merely involved personalty and dower rights were not involved; there was no evidence of a resulting trust, and the court expressly held the transaction a valid gift *inter vivos.* The *Blaine* case was concerned with the efforts of a wife to set aside a conveyance in which she had joined with her husband in order to defraud creditors. The *Culley* case was one wherein a daughter and heirs-at-law sued the brother of a deceased fraudulent grantor and there was no question of dower involved. It was there said: "The complainants sue as his heirs-at-law. It must be at once realized that the acquisitions of an heir are essentially derivative and successional. * * * If the ancestor has corruptly drained his reservoir of equity, how can his heirs, as such, legitimately obtain any derivative refreshment from it?"

Both courts below found as a fact that the widow was not involved in the fraud and that the doctrine of unclean hands did not apply to her. She cannot therefore be defeated

in her quest for dower upon the theory as expressed by the Appellate Division that her right is successional or derivative. A widow's dower estate is created by statute, *R. S.* 3:37–1. As Chancellor Walker said in *Reese v. Stires*, 87 *N. J. Eq.* 32 (*Ch.* 1917):

"These estates of dower and curtesy, it will be observed, arise out of the marriage relation and become consummate in wife and husband, respectively, upon the death of the other spouse, but they cannot be said to have descended to those persons. They become inchoate and are *vested in interest* during the lifetime of the ultimate beneficiary— the widow or tenant in dower * * *."

"Husband and wife are not the heirs of their deceased spouses. We say a man died leaving him surviving his widow A, and his heirs-at-law B, C and D. And we say that a woman died leaving her surviving her husband, F, and her heirs-at-law, G, H and I."

 And a widow is entitled to dower in an equitable estate or where the lands are taken in another's name for the use of or in trust for the real owner. *Mershon v. Duer*, 40 *N. J. Eq.* 333 (*E. & A.* 1885); *Young v. Young*, 45 *N. J. Eq.* 27 (*Ch.* 1889); *Radley v. Radley*, 70 *N. J. Eq.* 248 (*Ch.* 1905).

 The heirs-at-law stand on a different footing. Their estates are essentially derivative and successional, they can acquire no greater estate than their ancestor could have taken, and his titles having been taken in the name of the defendant in fraud of creditors and he having had the right to the titles but not being able to enforce them, neither can his children. *Bankers' Trust Co. v. Bank of Rockville, etc., supra; Culley v. Carr, supra.* The soundness of this rule was conceded on the argument and the claims of the infant plaintiffs were abandoned.

 As to the creditors we are of the opinion that they are entitled to a lien against the properties until such time as it is decided there is sufficient personalty to pay the creditors of the estate. The record of the administration of the estate or any accounting therein is not before the court.

Ordinarily the Chancery Division should not assume jurisdiction as to the rights of creditors unless it appears that the

jurisdiction of the County Court, Probate Division, is not adequate or there is some special reason calling for equity's intervention. *Robinson v. Hodge,* 4 *N. J.* 397 (1950), at *page* 402. But in this particular case reasons existed for equitable jurisdiction.

Under *R. S.* 3:25–21 the creditors had a lien on the real estate of the decedent for one year after his death for the purpose of paying his debts. Under ordinary circumstances it is settled that creditors have to show that the personal estate of the decedent was insufficient to pay the debts before an application can be made to sell the real estate of the decedent. *Rutherford v. Alyea,* 54 *N. J. Eq.* 411 (*E. & A.* 1896). *Cf. Robinson v. Hodge, supra.* And we shall assume as was intimated on the argument that such is the situation here.

The respondent contends that the creditors are without standing because they are not innocent creditors and they have not established their claims by judgment, and the Appellate Division held that the relationship of debtor and creditor was created subsequently and with full knowledge of the conveyances in question, citing *Hussong v. Fox,* 2 *N. J.* 209 (1949) ; *F. W. Horstmann Co. v. Rothfuss,* 128 *N. J. Eq.* 168 (*E. & A.* 1940), and *Gross v. Penn Mortgage, etc., Co.,* 104 *N. J. Eq.* 439 (*E. & A.* 1929). But these cases are not applicable to this situation. The first was a claim arising on a bond and mortgage and turned on the interpretation of the mortgage statute which regulates the manner in which such a claim should be proved before a lien attaches to the property, and the other two cases involved claims which had to be reduced by a judgment at law before there was a lien. And under the old Constitution the Court of Chancery could not hear such a case, and there is no need in this case to decide whether the Superior Court can deal with such a situation under the new Constitution.

*R. S.* 3:25–21 is identical with the statute construed in *Haston v. Castner,* 31 *N. J. Eq.* 697 (*E. & A.* 1879), at *page* 700. There Chief Justice Beasley in construing this statute held that while it was necessary prior to the statute for a creditor of an estate to take judgment before he could set a

deed aside as fraudulent, under the statute it was no longer necessary. because the lien is given by the statute, and in *Washington National Bank v. Beatty*, 77 *N. J. Eq*. 252 (*E. & A*. 1910), the Court of Errors and Appeals held that where an existing creditor attacks the conveyance it raises a conclusive presumption of fraud in so far as that creditor is concerned, but where a subsequent creditor attacks the conveyance he must prove fraud as a fact, that is, "an actual fraudulent intent to defraud some creditor," which means any creditor existing at the time when the conveyance is made or subsequently. It seems that these two cases effectively dispose of respondent's argument and the point made by the Appellate Division that a conveyance cannot be set aside until a judgment is obtained, and it makes no difference that the particular creditor had knowledge of the fraud, whether he be prior or subsequent thereto, as long as there is actual fraud involved in the conveyance, as is the case here.

The widow, Helen Pope, is entitled to a lien for her dower and to have it assigned and paid out of the properties. The judgment creditors are entitled to have their liens against the property continued until such time as they are paid by the administratrix out of the personalty in the estate of the decedent Pope. But in the event that the personalty is insufficient to pay their claims as established in the administration of the estate, then they are entitled to be paid out of the proceeds of the sale of the properties, subject to the widow's dower. Betty Bain, the defendant, is entitled to a lien on the property for the moneys expended by her in the maintenance of the properties applicable and attaching to the properties known as 170-172 Lafayette Avenue. The children as heirs-at-law are entitled to nothing.

The judgment of the Appellate Division is reversed without costs and the cause remanded to the Chancery Division of the Superior Court for the purpose of determining the amount of expenditures to which the defendant, Betty Bain, is entitled respecting properties at 170-172 Lafayette Avenue, and also the amount of the liens of the several creditors against all the properties in the event the personalty is insufficient to pay

their claims in full. Out of the proceeds of the sale of the properties the defendant, Betty Bain, shall first be paid the amount of her expenditures; Helen Pope, as the widow of the decedent Joseph Pope, shall then be paid her dower interests and the remainder of the proceeds shall then be paid to Helen Pope, as administratrix of the estate of Joseph Pope, deceased, subject to administration and payment of creditors.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.