**JOHN JULIAN CONSTRUCTION CO., a Delaware corporation, Plaintiff,**

v.

**MONARCH BUILDERS, INC., a Delaware corporation, Defendant.**

Superior Court of Delaware,
New Castle.

April 12, 1973.

---

Clyde M. England, Jr., and J. R. Julian of Killoran & VanBrunt, Wilmington, for plaintiff.

Daniel L. Twer and William F. Lynch, II of Morris, James, Hitchens & Williams, Wilmington, for defendant.

## OPINION

WRIGHT, Judge.

On November 27, 1968, judgment was entered in this Court for plaintiff, John Julian Construction Co., Inc. ("Julian"), in the amount of $36,301.36, plus interest and costs, against Monarch Builders, Inc. ("Monarch"). The action was brought by Julian in December, 1966 on a contract for work done by plaintiff at a development known as Cherry Hill. Julian, in an effort to execute its judgment against Monarch brought a writ of attachment *fieri facias* against Albert H. Marta (Marta) and Frank E. Acierno (Acierno) seeking to satisfy its judgment out of assets distributed to Marta and Acierno in liquidation of Monarch in April, 1968 while litigation

was pending against the corporation. This is the opinion of the Court on cross-motions for summary judgment filed by garnishees and plaintiff.

Monarch Builders, Inc. was organized under the laws of this State in June, 1963. The corporation was capitalized at $1,000; Marta, Acierno and one Mooney were the only stockholders with interests of 40-, 20- and 40 percent, respectively (Mooney was later eliminated from ownership, leaving Marta and Acierno with 60- and 40 percent interests, and is not a party to this action). The only business of Monarch was the development of a residential subdivision, Cherry Hill, located near Newark, Delaware. To enable Monarch to purchase the land from its owners, Marta loaned the new corporation $25,000 immediately after its organization, taking a bond of the corporation as security.

During the period here in question, 1963 through 1968, Marta and Acierno owned a majority interest in two other corporations: Marta Builders, Inc., engaged in developing the Highland West subdivision, and Alan Construction Co., which built and operated an apartment complex in Newark known as Park Place. Marta was president of all three companies and Acierno dealt with financial and administrative affairs. Monarch and Marta Builders operated out of the same office and shared office staff and a bookkeeper, for which Monarch paid nothing.

Throughout its active life, Monarch engaged in numerous financial transactions at irregular intervals with its stockholder-officers, Marta and Acierno, and with its sibling companies, Marta Builders and Alan Construction. The transactions with Marta and Acierno were carried on Monarch's books as cash deposits, loans or repayments to the company and salaries, bonuses, consulting fees, loans or repayments to them. Similarly, the transactions with Marta Builders and Alan Construction were characterized variously as loans, cash exchanges or transfers and payments.

These intercorporate transactions were often made to enable the transferee firm to pay current obligations.

On April 30, 1967, Monarch was dissolved; final liquidation followed a year later. The final statement of the accounts of Monarch showed assets of $47,428.29 and debts totaling $80,025.96. The assets consisted of an account receivable of $17,428.29 owed by Alan Construction and a mortgage receivable of Del-Penn Builders, Inc. valued at $30,000. The debts were comprised of $47,443.11 in accounts payable and $32,582.85 owed to Marta, Acierno and Marta Builders. Prior to dissolution, Monarch conveyed certain improved lots at Cherry Hill to Marta and Acierno who, after paying off the construction mortgage and obtaining conventional mortgages, conveyed the properties to Brosius Eliason Co. and Isadore Malone, subject to the mortgages, in payment of certain debts owed to them by Monarch in connection with work performed on the project. There is conflicting evidence in the record whether the $30,000 Del-Penn mortgage was received by Marta and Acierno as payment of the corporation's debts to them or in distribution of the firm's assets. The record contains several statements that the corporation was without any assets. However, garnishees have stated in other pleadings contrary to Julian's allegation, that Monarch had certain unspecified mortgages receivable which were susceptible to execution.

Following liquidation of Monarch, judgment was entered in this Court for Julian. Plaintiff undertook discovery in aid of execution which led it to conclude that the judgment debtor was without assets to satisfy the judgment. Julian first sought to execute its judgment against the corporation by reaching the assets in the hands of the stockholders by a suit in the Court of Chancery, but the suit was dismissed for failure of the plaintiff to exhaust its remedies at law. Plaintiff had issued a writ of attachment *fi. fa.* which was served upon

garnishees on March 26, 1970 and to which they answered "nulla bona". When plaintiff excepted to the answer, the issue was joined in this Court.

Attachment is an action law enabling a creditor to reach the property of his debtor and to apply such property as is susceptible to process in satisfaction of the debt. 10 Del.C. § 5031; 2 Wooley on Delaware Practice, § 990, p. 682. Garnishment, in turn provides a means for a creditor to reach the property or credits of his debtor in the possession of a third person. 2 Shinn on Attachment and Garnishment, § 486, p. 852; 2 Wooley, supra, § 1162, p. 802. The term "property" is defined by statute to include, "goods, chattels, rights, credits, monies, effects, lands and tenements". 10 Del.C. § 3508. Attachment and garnishment being actions at law, equitable rights, interests and estates of the debtor are not subject to such process. Provident Trust Co. v. Banks, 24 Del.Ch. 254, 9 A.2d 260 (1939); 2 Shinn, supra, loc. cit. Attachment is a summary process in derogation of the common law and, therefore, the statute is to be strictly construed in favor of the party against whom the proceeding is employed, both as to the subject matter of the attachment and the method of enforcing the remedy. Clark v. Foster, Del.Super., 11 Terry 434, 133 A.2d 601 (1957).

Plaintiff has set forth in its brief essentially two bases of garnishees' liability: First, plaintiff relies upon the alleged assumption of Monarch's liabilities by the garnishees upon the liquidation of the corporation; and, second, plaintiff alleges that the distribution of Monarch's assets, leaving it without assets with which to pay the potential judgment creditor was fraudulent as to plaintiff.

In seeking to execute its judgment against the debtor corporation by attachment process, plaintiff has, in effect, elected to place himself in the debtor's shoes vis-a-vis the garnishees. Plaintiff's right to recover from the garnishees is derived from, and no greater than, the corporation's right to recover from Marta and Acierno in an action at law. Forbes v. Thompson, Del.Super., 2 Pennewill 530, 47 A. 1015 (1900); 2 Shinn, supra, § 487, pp. 853-4. The issue with respect to plaintiff's theories of assumption of liability and fraud is, in each case, whether the principal debtor could, in an action at law, recover from the garnishees' possession property or credits belonging to the debtor. 2 Shinn, supra, § 516, p. 893.

The garnishees admit that they assumed certain liabilities of the corporate debtor, but deny that the debt owed to Julian was among them. A contract for the assumption of the liabilities of another is a third party beneficiary contract in which the debtor is the promisee, the assuming party the promisor, and the original creditor the beneficiary. 4 Corbin on Contracts, § 787, pp. 95-6. In Delaware, as in every state except Massachusetts, the beneficiary has a right of action against the promisor to enforce the contract. Wilmington Housing Authority v. Fidelity & Deposit Co., Del.Supr., 4 Terry 381, 47 A.2d 524 (1946); Royal Indemnity Co. v. Alexander Industries, Inc., Del.Supr., 211 A.2d 919 (1965). However, in this case, the crucial issue is the right of the promisee to recover at law from the promisor.

As to plaintiff's assertion of its right to recover from garnishees derivatively through the principal debtor on garnishee's alleged assumption of Monarch's liability to Julian, counsel for neither party has addressed the key issue in his briefs or on oral argument. Nevertheless, since the promisor's right forms the foundation of plaintiff's rights in this case, the Court feels constrained to deal with the issue.

At common law, it was apparently felt that the promisee should not be allowed full recovery against the promisor for the latter's breach unless the creditor had collected the debt from him, the promisee's remedy being limited to nominal damages

at law or specific performance in equity. In consequence, in garnishment actions:

> [w]hen a garnishee has contracted with the principal debtor that he will pay the money or deliver the property to some third person, the plaintiff in garnishment cannot recover, because he is only placed in the position of the principal defendant, who could not himself recover from the person made garnishee. 2 Shinn, supra, § 516, p. 895.

Thus, it is clear that under the above rule, the Court would be required to grant garnishees' motion for summary judgment on this issue.

 Counsel have referred the Court to no Delaware cases which have decided the point, nor has the Court discovered any in its own research. The weight of modern authority appears to be contrary to the underlying premise of the above-quoted passage from Shinn, however. The modern and, in the Court's mind, better view is that where, in a third party beneficiary contract, the promisor has breached its duty to perform an act for the benefit of a creditor beneficiary, the promisee—the original obligor—has a right to recover the full value of the promised performance from the promisor. Restatement, Contracts § 136(1)(b); 4 Corbin on Contracts § 812, p. 242; 2 Williston on Contracts (3d ed.) § 362, p. 1057. Accordingly, having held that the promisee does have an action at law against the promisor to recover the full performance of the promisor's promise —the payment of the principal debtor's liabilities—the creditor may maintain an action at law in garnishment against the promisor-garnishee. Julian alleges, and garnishees deny, that the debt owed to plaintiff was among those assumed by Marta and Acierno. There being a dispute as a material issue of fact, summary judgment cannot be granted. Super.Court Rules, Civil, Del.C.Ann., R. 56; Matas v. Green, Del.Super., 171 A.2d 916 (1961) Howard v. Food Fair Stores, Del.Super., 201 A.2d 638 (1964).

 That the Court's holding in this case may in some cases result in multiple liability to persons assuming liabilities of others is true, since recovery by the promisee does not bar recovery by the creditor beneficiary. But, the promisee is a party to the contract, his interest in its performance is substantial, and the unjust enrichment that might accrue to the breaching promisor outweighs the risk of multiple liability being imposed upon the promisor. The Court notes, however, that the rules of procedure afford considerable measure of protection against multiple liability by permitting the promisor to join the beneficiary in an action brought by the promisee. Superior Court Rules, Civil, Del.C.Ann., Rules 17, 19 and 20.

 That plaintiff has not shown a written agreement between the promisors and promisee as required by the statute of frauds, 6 Del.C. § 2714, does not prevent an action on the promise, since it clearly appears that the assumption of liability—if it in fact included the liability to Julian—has been partially performed. Danby v. Osteopathic Hospital Assn. of Del., 34 Del.Ch. 172, 101 A.2d 308, aff'd. 34 Del.Ch. 427, 104 A.2d 903 (1954); Durand v. Snedeker, 40 Del.Ch. 166, 177 A.2d 649 (1962).

 In making its claim of fraud, plaintiff specifically relies upon the Uniform Fraudulent Conveyance Act, 6 Del.C. § 1301 et seq., and the doctrine popularly known as "piercing the corporate veil". Martin v. D. B. Martin Co., 10 Del.Ch. 211, 88 A. 612 (1913); Equitable Trust Co. v. Gallagher, Del.Supr., 34 Del.Ch. 76, 99 A.2d 490 (1953). Although questions of fraud are considered equitable in nature, it is clear that a court of law is equally competent to adjudicate issues of fraud. Kuhn Construction Co. v. State Acting Through Price, Del.Super., 248 A.2d 612 (1968); Pomeroy's Equity Jurisprudence, § 914, p. 587.

 In support of its theory premised upon the Fraudulent Conveyance Act,

plaintiff relies upon Cooch v. Grier, 30 Del.Ch. 255, 59 A.2d 282 (1948), in which it was held that the transfer of assets by the defendant in a civil action on the eve of trial, leaving himself without assets with which to satisfy the judgment which resulted against him, was a "badge of fraud". Again, it is not the right of the defrauded party that forms the basis of the fraudulent transferor. It is settled law that, except in unusual circumstances not here present, a transfer is good as between the fraudulent transferor and those claiming under him and the transferee. Culley v. Carr, 137 N.J.Eq. 516, 45 A.2d 850 (N.J.Ch., 1946); but compare Palmer v. Foley, 305 Pa. 169, 157 A. 474 (1931) and Pope v. Bain, 8 N.J.Super. 263, 74 A.2d 317 (1950), reversed in part 6 N.J. 351, 78 A.2d 820 (1951). Likewise, it has been held that where a corporation distributes its assets to its stockholders, leaving unsatisfied creditors, the distributees take the assets impressed with a lien in favor of the unpaid creditors who may recover directly from the distributees and without resort to the Fraudulent Conveyance Act. Nye Odorless Incinerator Corp. v. Nye Oderless Crematory Co., 18 Del.Ch. 179, 156 A. 176 (1931). In such cases, the corporation does not have a right to recover the assets from the distributees and hold them for itself. Id. at 178. Thus, under either fraud theory advanced by plaintiff, the principal debtor does not have a right of action at law against the party to whom the property or assets were transferred, although the unpaid creditor may go against the transferee directly and in his own name.

 The plaintiff prays for certain forms of relief that sound in equity does not automatically confer jurisdiction upon the Court of Chancery or deny this Court jurisdiction. For a court of equity to have exclusive subject matter jurisdiction, something more than merely the assertion of an equitable right to purely monetary relief, such as cancellation, is required. Gaskewicz v. Spear, 36 Del.Ch. 67, 125 A.2d 269 (1956). The exercise by this Court of its inherent equitable powers is discretionary, however, depending upon such considerations as the simplicity of the issue to be tried, the number of witnesses who can testify on the issue, the ability of the Court to shape an adequate and complete remedy, and the convenience of trying the cause in a court of law. McBane v. Central-Penn Nat. Bank of Philadelphia, Del.Super., 11 Terry 130, 125 A.2d 167 (1956); Flaherty v. Industrial Trust Co., 20 Del.Ch. 403, 178 A. 586 (1935); Industrial Trust Co. v. Miller, Del.Super., 5 W.W.Harr. 554, 170 A. 923 (1934). From the facts as they appear in the record developed thus far, a fair adjudication of the rights of the parties would necessitate a wide-ranging investigation of the dealings of the corporate debtor involving numerous witnesses. In the view of the Court, this is not an appropriate case in which it should exercise its equitable powers.

In its brief to the Court of Chancery in support of its motion to dismiss plaintiff's suit in that Court, Monarch averred that it had certain valuable assets in the form of mortgages receivable which were susceptible to execution process. Since it does not appear that plaintiff has sought to reach these assets, it may wish to pursue this course of action further.

The motion of plaintiff for summary judgment is denied. The motion of the garnishees for summary judgment is granted as to plaintiff's claim based upon fraud, but denied as to the issue of assumption of the corporation's liabilities by garnishees, there being a dispute as to whether or not garnishees assumed the debt of Monarch to Julian upon liquidation.

It is so ordered.